UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DWAYNE WYATT,

      Plaintiff,

-against-

THE CITY OF NEW YORK; JOHN DOES 1-6,

      Defendants.

COMPLAINT

17-CV-3236

**JURY TRIAL DEMANDED**

---

### PRELIMINARY STATEMENT

1. Plaintiff Dwayne Wyatt, a 33 year-old man confined to a wheelchair, was arrested and held in custody by employees of the City of New York, including members of the New York City Police Department ("NYPD"). During his custody Mr. Wyatt was alternatively handcuffed to a cell, unable to move in his wheelchair, or dispossessed of his wheelchair entirely. Mr. Wyatt was denied an accommodation to use the toilet during the approximately thirteen hours of his detainment, and was instead left covered in his own urine.

2. Plaintiff brings this action alleging violations of the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, *et seq.*, in depriving him of his wheelchair and failing to provide reasonable accommodation, and discriminating against him because of his disability, the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, 28 C.F.R. Part 35, and the Civil Rights Act of 1871, amended and codified as 42 U.S.C. § 1983, for subjecting him to unconstitutional conditions of confinement, and the deprivation of rights accorded by the Fourth and Fourteenth Amendments to the United States Constitution.

3. This complaint seeks compensatory damages, punitive damages and attorneys' fees.

1

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act"); 28 C.F.R. Part 35; and the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States, in addition to pendant claims under the laws of the State of New York.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff's claims arose in Kings County in the State of New York, within the confines of this judicial district.

6. As authorized by New York General Municipal Law § 50-e, Mr. Wyatt filed a timely Notice of Claim with the New York City Comptroller on or about August 5, 2016. Thus, this Court has supplemental jurisdiction over Mr. Wyatt's claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

7. Mr. Wyatt's claims have not been adjusted by the New York City Comptroller's Office.

8. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §§ 1988 and 12205.

## PARTIES

9. Plaintiff Dwayne Wyatt ("Mr. Wyatt") was at all times relevant to this action a resident of the County of Kings in the State of New York. Mr. Wyatt suffered an injury in 2003 after which he became paralyzed from the waist down. Due to his paralysis, Mr. Wyatt relies upon

2

a wheelchair for mobility and requires the accommodation of medical equipment in order to urinate. On the basis of these conditions, Mr. Wyatt is and was at all times relevant to this action a qualified individual within the meaning of the ADA and the Rehabilitation Act.

10. Defendant City of New York ("City") is a municipal corporation organized under the laws of the State of New York. It is authorized by law to maintain a correction department ("DOC") which acts as its agent in the area of corrections for which it is ultimately responsible. It is also authorized by law to maintain a police department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of the DOC and NYPD and the employment of corrections/police officers as said risks attach to the public consumers of the services provided by the DOC/NYPD.

11. Defendant City operates a number of detention jails, including the detention jail located at 120 Schermerhorn Street, Brooklyn, New York 11201 ("Brooklyn Central Booking"). At all relevant times hereto, the New York City Department of City Administrative Services ("DCAS") owned or managed the building located at 120 Schermerhorn, Brooklyn, New York 11201, where Brooklyn Central Booking is located. Through the DCAS, the City manages the daily maintenance and operation and oversees any repairs to these buildings and therefore had a duty to the facilities enabled compliance with federal disability law and to ensure the facilities comply with Federal Law.

12. Upon information and belief, the City operates and manages the custody of detainees held at Brooklyn Central Booking, receives federal funding for the same, and through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to access to medical and other program

services mandated by law. In addition, senior officials of the City are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten City policies or customs. Defendant City is also responsible for the appointment, training, supervision, and conduct of all City personnel, including the defendants referenced herein.

13. Upon information and belief, the City operates and manages the custody of detainees held at Brooklyn Central Booking, receives federal funding for the same, and through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to access to medical and other program services mandated by law. Defendant City, and through its agencies including the NYPD, DOC, and DCAS, promulgates and implements policies, including those with respect to compliance with federal, state and local disability laws, reporting, and investigation of compliance by staff and of facility conditions, and access to medical and other program services mandated by local law and court orders. In addition, senior officials of the City are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the City, constitute unwritten City policies or customs. Defendant City is also responsible for the appointment, training, supervision, and conduct of all City personnel, including the defendants referenced herein.

14. Defendants JOHN DOE 1-6 are and were at all times relevant herein, officers, employees and agents of defendant City. Defendants JOHN DOE 1 - 6 acted intentionally, recklessly, with malice, and in gross disregard of Mr. Wyatt's rights, and they are being sued herein in their

individual capacities. Defendant JOHN DOES 1-6 are hereinafter referred to as the "individual defendants."

15. At all times relevant herein, the individual defendants were employees or agents of defendant City and were acting under color of state law in the course and scope of their duties and functions as agents, servants, and employees of the City and otherwise performed and engaged in conduct incidental to their lawful functions in the course of their duties. They were acting for and on behalf of the City at all times relevant herein, with the power and authority vested in them as agents and employees of the City and incidental to their duties as agents and employees of the City.

16. At all relevant times, the defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

17. The true names and shield numbers of defendant John Does are not currently known to Mr. Wyatt. However, John Doe defendants were employees or agents of the defendant City, on the date of the incident, April 10, 2015. Accordingly, they may be entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Mr. Wyatt intends to name said officers as defendants in an amended pleading once their true names and shield numbers become known and (b) that the Law Department should immediately begin preparing their defense(s) in this action.

## STATEMENT OF FACTS

18. As a result of an injury to Mr. Wyatt's spine which paralyzed him from the waist down, Mr. Wyatt is an individual with a disability as defined under the ADA.

19. On or around June 29, 2016, at approximately 9:30 p.m., Mr. Wyatt was arrested by officers of the NYPD outside of his residence.

20. Mr. Wyatt's hands were cuffed behind his wheelchair, and he was transported via his own wheelchair to the NYPD Precinct located down the block at 2860 W 23rd St, Brooklyn, New York 11224.

21. P.O. John Doe 1 wheeled Mr. Wyatt inside the Precinct and into a jail cell.

22. Upon information and belief, defendant Captain John Doe 2 informed P.O. John Doe 1 that Mr. Wyatt could not remain in the cell with his wheelchair.

23. Mr. Wyatt was then taken back out of the cell, and, outside the cell, was handcuffed by his wrist to the bar of the cell.

24. With the use of only one arm, Mr. Wyatt was unable to lift, shift or move in his wheelchair as was his custom in order to prevent spasms from occurring and bed sores from developing.

25. At all times relevant to this incident, Mr. Wyatt requires the use of a wheelchair for mobility and the use of medical equipment, namely a catheter kit, in order to empty his bladder. He further requires a wheelchair-accessible toilet in order to defecate.

26. Mr. Wyatt informed the officers that his friend, who was present at the precinct in order to assist Mr. Wyatt, could deliver the catheter kit and medical equipment Mr. Wyatt required.

27. The individual defendants refused to allow Mr. Wyatt, via his friend, to access the catheter kit and medical equipment.

28. Mr. Wyatt subsequently requested use of the restroom and a catheter kit and other medical equipment necessary to accommodate his disability.

29. Mr. Wyatt was taken to the bathroom, but upon discovering the bathroom was devoid of any accommodation to enable him to utilize the facility, was returned to the handcuffed position outside the cell.

30. Upon again being handcuffed to the outside of the cell, defendant P.O. John Doe 1 stated, in sum and substance, "we do not accommodate criminals."

31. Mr. Wyatt's urine bag became overfull and began leaking, causing urine to spill onto his skin and clothing, and causing the catheter of the urine bag to malfunction.

32. At or around approximately 2:00 a.m., the detainees at the precinct apart from Mr. Wyatt were transported to Brooklyn Central Booking.

33. At or around 4:00 a.m., defendant P.O. John Doe 3 removed Mr. Wyatt from his wheelchair in order to place him in the cell.

34. While attempting to place Mr. Wyatt on the shallow bench within the cell, defendant John Doe 3 dropped Mr. Wyatt, injuring Mr. Wyatt's existing bedsores and causing a laceration, bleeding and bruising to Mr. Wyatt.

35. Mr. Wyatt was left, deprived of his wheelchair or any assistive device, in the cell until approximately 9:00 a.m., when defendants John Doe 4 and John Doe 5 transported Mr. Wyatt to Brooklyn Central Booking.

36. Upon information and belief, the van provided no accommodation for Mr. Wyatt's wheelchair.

37. Mr. Wyatt was instead hoisted out of his wheelchair, while wet from and smelling of urine, while defendants P.O. John Does 4 and 5 each held limbs and carried him to a seat of the transport van.

38. Upon his arrival at Brooklyn Central Booking, Mr. Wyatt was evaluated by medical personnel who denied Mr. Wyatt's request for the medical equipment he required in order to urinate.

39. Medical staff neither provided nor arranged for any accommodation in order to allow Mr. Wyatt to urinate or defecate.

40. Mr. Wyatt was then placed inside a cell by himself and with his wheelchair.

41. Mr. Wyatt discovered the toilets that existed in these cells were located in such proximity to the cell wall as to prevent Mr. Wyatt from maneuvering his wheel chair sufficiently near to the toilet in order for him to transfer his body to the toilet seat.

42. The floor of the holding cell was filthy, contained trash and vermin, smelt of urine, and was unsanitary.

43. At approximately 3:30 p.m. on June 30, 2016, Mr. Wyatt was arraigned and released on his own recognizance.

44. Defendant City and the individual defendants held Mr. Wyatt in custody longer than other similarly situation detainees solely due to his disability.

45. At no time during his detention was Mr. Wyatt provided any food.

46. Mr. Wyatt developed a urinary tract infection as a result of defendants' denial of necessary accommodations.

47. As a result of the many hours Mr. Wyatt was forced to remain with urine covering his clothes and skin, as well as a result of the laceration and impact of being dropped onto the precinct cell bench, Mr. Wyatt's existing bedsores worsened and he developed additional bedsores.

48. Defendants deprived Mr. Wyatt of any accommodation for the duration of his detention and subjected him to atypical conditions of confinement in depriving him of any mobility within

the cell, depriving him of a medical necessary catheter kit or medical equipment, depriving him of the ability to access a toilet, depriving him of any food, and subjecting him to serious and substantial health risks.

49. As a result of defendants' acts and omissions, Mr. Wyatt experienced pain, suffering, mental anguish, and humiliation.

### FIRST CAUSE OF ACTION
### PURSUANT TO 42 U.S.C. § 12131 *et al.* and 29 U.S.C. § 794
### AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT
*(Against All Defendants)*

50. Mr. Wyatt repeats and re-alleges each of the above paragraphs with the same force as if set forth herein.

51. By depriving Mr. Wyatt of his wheelchair and failing to provide reasonable accommodation to enable Mr. Wyatt to empty his bladder, to move within the holding cell, to sit, to access food, or to use the toilet during his detention; failing to provide vehicle transportation accommodating Mr. Wyatt's disability; and by discriminating against Mr. Wyatt by delaying his arraignment due to his disability, the defendants deprived Mr. Wyatt of his rights guaranteed by the ADA and the Rehabilitation Act and federal regulation applicable to the confinement of individuals with disabilities.

52. Defendants denied Mr. Wyatt access to prison programs and benefits available to arrestees in City custody, by denying and failing to provide any accommodation enabling access to toilets, food and liberty of movement.

53. As a result of defendants' acts and omissions, Mr. Wyatt was denied the immediate medical care he required, had his liberty unnecessarily restricted, and otherwise suffered injury and damages including, *inter alia*, physical and mental pain, suffering, humiliation and mental anguish.

## SECOND CAUSE OF ACTION
## THROUGH 42 U.S.C. § 1983
## <u>DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION</u>
### *(Against the Individual Defendants)*

54. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

55. By the acts alleged herein, the individual defendants, acting under color of state law, in their individual capacities and within the scope of their employment, have deprived plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, and/or failed to intervene to prevent such deprivations, in violation of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, including his right to be free from deprivation of liberty and excessive punishment without due process of law; to be free from unconstitutional conditions of confinement and objectively unreasonable conditions; and to be free from disparate and inhumane punishment.

56. As a result of defendants' acts and omissions, Mr. Wyatt was denied the immediate medical care he required, had his liberty unnecessarily restricted, and otherwise suffered injury and damages including, *inter alia*, physical and mental pain, suffering, humiliation and mental anguish.

## THIRD CLAIM
## MUNICIPAL LIABILITY PURSUANT TO *MONELL*
## <u>FOR CONTITUTIONAL VIOLATIONS THROUGH 42 U.S.C. § 1983</u>
### *(Against the City of New York)*

57. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

58. The acts and omissions described above were carried out pursuant to defendant City's overlapping customs and practices which were in existence on or about June 29, 2016 and

were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agencies the NYPD, DOC, and DCAS, in their capacities as officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD, DOC and DCAS.

59. Despite having been made aware of the unconstitutional conditions of Brooklyn Central Booking, defendant City and other municipal policymakers and supervisory personnel failed to adequately train, supervise, monitor and discipline members of the NYPD, DOC, and DCAS and other municipal personnel, who contribute to the unconstitutional conditions described herein.

60. The aforementioned custom and practice of the City and the NYPD include, but are not limited to, failing to provide accommodation of pre-arraignment detainees who require the use of a wheelchair for mobility.

61. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct. The population of New York City includes almost 180,000 individuals with an ambulatory disability, and approximately 95,000 individuals who use wheelchairs, according to the De Blasio administration Commissioner of the Mayor's Office for People with Disabilities, Victor Calise.[1] According to the United States Census Bureau, the population of Kings County in 2015 was 2,636,735.[2] In Kings County alone, the number of adult arrests from 2010 through 2015 reached over half a

---

[1] "Accessible NYC: An Annual Report on the State of People Living with Disabilities in New York City by the Mayor's Office for People with Disabilities," see pages 8, 16.
[2] "Quickfacts Kings County (Brooklyn Borough, New York," United States Census Bureau, available at: https://www.census.gov/quickfacts/table/PST045215/36047

million, or 532,379 total.[3] Given the substantial population that relies upon wheelchairs for mobility, as well as the high number of arrests within Kings County, the unconstitutional practices described herein constitute a custom and policy of violating the rights of wheelchair reliant detainees held at Brooklyn Central Booking.

62. The existence of aforesaid unconstitutional customs and policies may also be inferred from repeated occurrences of similar wrongful conduct, as documented and published by media sources, including:

   a. The Pre-Arraignment Screening Correction Health Services form fails to include any questions regarding disabilities or possible need for accommodation;

   b. James King "A Guide to NYPD's Central Booking: Go for the Urine-Scented Everything; Stay Because They Won't Let You Leave" Village Voice, Oct. 24, 2012. Available at http://www.villagevoice.com/news/a-guide-to-nypds-central-booking-go-for-the-urine-scented-everything-stay-because-they-wont-let-you-leave-6674168;

   c. Samuel Newhouse "Retired Brooklyn Cop Writes Book on Inefficient NYPD" Dec. 23, 2008 Brooklyn Eagle. Available at http://50.56.218.160//archive/category.php?category_id=4&id=25412; ("About a decade ago, Linn said she supervised the midnight shift at Brooklyn Central Booking at a time when conditions there were particularly hazardous and unsanitary. Because of these conditions, officers had to keep vulnerable prisoners at the station house and supervise them one-on-one, she wrote in the book.");

   d. Jen Carlson "An Unexpected Visit to Brooklyn Central Booking" Gothamist, Dec. 27, 2007. Available at http://gothamist.com/2007/12/27/an_unexpected_v.php;

63. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following actions filed against the City:

   i. <u>Cano, et al. v. City, et al.</u>, 13 Civ. 3341 (WFK) (VVP): Plaintiffs allege Brooklyn Central Booking subjects detainees to overcrowding, unsanitary conditions, lack of sleeping space; deprivation of sleep because *inter alia* they were not provided beds, because the lights were on at all times; ususable toilets; sanitation issues with

---

[3] "Adult Arrests: 2007-2016," Division of Criminal Justice Services, New York State, available at: http://www.criminaljustice.ny.gov/crimnet/ojsa/arrests/Kings.pdf

  garbage, urine, feces, and garbage left uncleaned on the floor; infestation of rodents and insects; crime due to lack of supervision of detainees; inadequate water and food that cannot be consumed; substantial risk of harm;

  ii. <u>Spinner, et al. v. City of New York, et al.</u>, 01 Civ. 2715, 01 Civ. 8264, 02 Civ. 2899, 02 Civ. 1039 (E.D.N.Y.): Alleging plaintiffs and numerous other arrestees were held in filthy, disease-ridden, overcrowded jail cells; cells infested with rodents and roaches for years; human feces and urine on the floor; cells contained one toilet to be shared by all detainees with no privacy; lack of clean drinking water; no supervision for violent criminals sharing cells;

  iii. <u>Darnell v. City of New York</u>, 15 Civ. 2870 (2d Cir. 2017). The Circuit reviewed the allegations of unconstitutional conditions of confinement at Brooklyn Central Booking and stated, "[t]he plaintiffs paint a picture of BCB that is alarming and appalling. The plaintiffs testified that they found the conditions at BCB degrading, humiliating, and emotionally scarring. One plaintiff testified: "I was not treated in a humane manner. I believe if I were a dog, and that if the A.S.P.C.A. was brought in and there was a dog in that cell, that the police officers, whoever were responsible for the treatment of that dog in that cell, that they would be brought up on charges." See Darnell v. Pineiro, 849 F.3d 17, 26 (2d Cir. Feb. 21, 2017).

  iv. <u>Narvaez v. City of New York</u>, 16 Civ. 1980 (GBD). Alleging unconstitutional conditions of confinement for pretrial detainees in violation of the ADA and at Brooklyn Detention Center.

64. As a result of defendants' acts and omissions, Mr. Wyatt was denied the immediate medical care he required, had his liberty unnecessarily restricted, and otherwise suffered injury and damages including, inter alia, physical and mental pain, suffering, humiliation and mental anguish.

**FOURTH CLAIM FOR RELIEF
NEGLIGENCE
Negligent Hiring/Training/Discipline/Retention of Employment Services
<u>UNDER THE LAWS OF THE STATE OF NEW YORK</u>
(*Against all defendants*)**

65. Plaintiff reiterates the above paragraphs as if set forth herein and incorporate such by reference.

66. The ADA provides a standard of care applicable for negligence action.

67. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

68. Defendants owed a duty of care to Plaintiff to prevent the physical, mental, and economic damages sustained by Plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiff or to those in a like situation would probably result from this conduct.

69. Defendants jointly and severally, negligently caused injury, pain and suffering, emotional distress, and damage to Plaintiff. The acts and conduct of defendants were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

70. Defendant City negligently hired, screened, retained, supervised, and trained the individuals defendants.

71. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

72. As a result of defendants' acts and omissions, Mr. Wyatt was denied the immediate medical care he required, had his liberty unnecessarily restricted, and otherwise suffered injury and damages including, inter alia, physical and mental pain, suffering, humiliation and mental anguish.

## EIGHTH CLAIM FOR RELIEF
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### UNDER THE LAWS OF THE STATE OF NEW YORK
(*Against all defendants*)

73. Plaintiff incorporates by reference the allegation set forth in all preceding paragraphs as if fully set forth herein.

74. By the actions described above, defendants engaged in extreme and outrageous conduct, which negligently caused severe emotion distress to Plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

75. As a result of the foregoing, Plaintiff was deprived of his liberty and property, suffered emotional distress, humiliation, and was otherwise damaged and injured.

### NINETH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### UNDER THE LAWS OF THE STATE OF NEW YORK
(*Against all defendants*)

76. Plaintiff incorporates by reference the allegation set forth in all preceding paragraphs as if fully set forth herein.

77. By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally caused severe emotion distress to Plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

78. As a result of the foregoing, Plaintiff was deprived of his liberty and property, suffered emotional distress, humiliation, and was otherwise damaged and injured.

### JURY DEMAND

79. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

I. Award Plaintiff punitive damages in an amount to be determined at trial;

II. Award Plaintiff compensatory damages in an amount to be determined at trial;

III. Award Plaintiff reasonable attorneys fees and costs as authorized pursuant to 42 U.S.C. §§ 1988 and 12205; and

IV. Grant such other further and different relief as to the Court may seem just and proper.

Dated: New York, New York
May 30, 2017

Respectfully submitted,

By: _____
Gillian Cassell-Stiga
Rankin & Taylor PLLC
11 Park Place, Suite 914
New York, New York 10007
Phone: (212) 226-4507
Email: gillian@drmtlaw.com

Michael L. Spiegel
  of counsel
Rankin & Taylor, PLLC
11 Park Place, Suite 914
New York, NY 10007
Phone: (212) 587-8558
Email: MIKESPIEG@aol.com

*Attorneys for Plaintiff*